IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

THAD LOUIS GARRETT,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C14-4095

REPORT AND
RECOMMENDATION

---

## TABLE OF CONTENTS

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    *A.*    *Garrett's Education and Employment Background* . . . . . . . . . . . . 5
    *B.*    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . . . . . . 5
        *1.*    *Garrett's Testimony* . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        *2.*    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . . . . . 7
    *C.*    *Garrett's Medical History* . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

V.    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    *A.*    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . . . . . . . 13
    *B.*    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . . . . . . . 16
        *1.*    *Obesity* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        *2.*    *Medical Source Opinions* . . . . . . . . . . . . . . . . . . . . . . . 18
            *a.*    *Treating Acceptable Medical Sources* . . . . . . . . . . . . 18
                *(1)*    *Dr. Larose's Opinions* . . . . . . . . . . . . . . . . 20
                *(2)*    *Dr. Ingram's Opinions* . . . . . . . . . . . . . . . . 21
                *(3)*    *Dr. Baker's Opinions* . . . . . . . . . . . . . . . . . 23

          b.      *Treating Non-Acceptable Medical Source* . . . . . . . . . 24
          c.      *Non-Examining State Agency Doctors* . . . . . . . . . . 26
      3.     *Credibility Determination* . . . . . . . . . . . . . . . . . . . . . . 27
      4.     *RFC Assessment* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
   C.     *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

VI.   *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

VII.  *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Thad Louis Garrett on October 31, 2014, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Garrett asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Garrett requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On June 28, 2011, Garrett applied for both disability insurance benefits and SSI benefits. In his applications, Garrett alleged an inability to work since November 15, 2009 due to depression, diabetes, and degenerative changes in his spine. Garrett's applications were denied on October 11, 2011. On December 21, 2011, his applications were denied on reconsideration. On February 25, 2013, Garrett appeared via video conference with his attorney before Administrative Law Judge ("ALJ") David G. Buell for an administrative hearing. Garrett and vocational expert Carma A. Mitchell testified at the hearing. In a decision dated April 25, 2013, the ALJ denied Garrett's claims. The ALJ determined that Garrett was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in

significant numbers in the national economy. Garrett appealed the ALJ's decision. On September 12, 2014, the Appeals Council denied Garrett's request for review. Consequently, the ALJ's April 25, 2013 decision was adopted as the Commissioner's final decision.

On October 31, 2014, Garrett filed this action for judicial review. The Commissioner filed an Answer on January 2, 2015. On January 30, 2015, Garrett filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On March 20, 2015, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On March 23, 2015, Garrett filed a reply brief. On March 25, 2015, Judge Mark W. Bennett referred this matter to a magistrate judge for issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

### III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)).

Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id*. (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id*. at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id*. Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v.*

*Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

## IV. FACTS

### A. Garrett's Education and Employment Background

Garrett was born in 1972. He is a high school graduate. Following high school, Garrett also attended one year of college. In the past, he has worked as material handler, stock clerk, and laborer in the meat packaging industry.

### B. Administrative Hearing Testimony

#### 1. Garrett's Testimony

At the administrative hearing, the ALJ asked Garrett to describe his typical day. Garrett responded that he generally wakes up around 7:00 a.m., gets his daughter ready for school, takes her to school, sits at home watching television, makes lunch, takes a nap, and picks his daughter up from school. Garrett also stated that about once per week he does household chores like washing dishes or doing the laundry. According to Garrett, at various times, he also receives help from his parents completing household chores.

Next, the ALJ inquired about Garrett's lower extremity problems. Garrett testified that he has undergone multiple left ankle surgeries, and his left ankle continues to bother him. He also stated that he has problems with his legs due to neuropathy and diabetes. He estimated that he could walk at a slow pace for "maybe" five to ten minutes.

Turning to his upper extremities, the ALJ asked Garrett to describe his problems with his arms and hands. Garrett explained that he has undergone carpal tunnel surgery and elbow surgery in the past. More recently, he also had left shoulder surgery. He stated that he does not have "a lot of strength" in his elbows, and his hands often "go to sleep a lot."

Lastly, the ALJ and Garrett discussed his difficulties with diabetes:

> Q: . . . Well, let's talk about, Mr. Carter mentioned the blood sugar aspect of diabetes. Tell me how that affects your life.
>
> A: Well, if I get too -- if I have too low blood sugar I have a diabetic reaction. I have to get, you know, somebody to give me some sugar of some sort to raise my blood level, sugar levels back up.
>
> Q: Okay.
>
> A: If I don't get anybody to do that for me, or if I'm not able to do it by myself, I can go into a coma and then eventually end up passing away from it. . . .

(Administrative Record at 64-65.)

Garrett's attorney also questioned Garrett. First, Garrett's attorney inquired how often Garrett has difficulty with low blood sugar levels. Garrett stated that he has to address low blood sugar levels two to four times per week. He further stated that it takes him as little as five minutes, and as much as two hours to recover from a low blood sugar attack. Next, Garrett's attorney inquired about Garrett's ability to use his hands and fingers, and grasp items. Garrett testified that typing on a keyboard causes his hands and fingers to go numb within five to ten minutes. He also stated that grasping small items was difficult. With regard to his left shoulder problems, Garrett testified that he has difficulty lifting anything above chest high. Garrett further stated that due to his left ankle pain, he is unable to kneel or squat. When asked whether he believed he could work a full-time job, Garrett responded that he could not. Specifically, Garrett stated:

As bad as my diabetes has been with my blood sugars, and my joints and stuff giving away, I don't think I could stand to have a job for very long, if at all, to work. So, it [(*sic*)] just wouldn't be able to do it anymore.

(Administrative Record at 73.)

## 2. *Vocational Expert's Testimony*

At the hearing, the ALJ provided the vocational expert with a hypothetical for an individual who is:

limited to performing light work[.] . . . I want you to assume that this worker has some non-exertional limits, mainly that this worker can stoop, crouch, kneel, and crawl only occasionally, no more than one third of the time. This worker cannot climb ladders, ropes, and scaffolds on the job. The worker cannot do any lifting using . . . the non-dominant, left, upper extremity for any lifting above the shoulder level or so. So, can't do that at all. And then when it comes to handling and fingering cannot do either of those tasks more than frequent. So, up to frequent, but no more than that. And then when it comes to using both of the upper extremities, cannot do pushing or pulling using the upper extremities more than frequent. . . .

(Administrative Record at 81.) The vocational expert testified that under such limitations, Garrett could not perform his past relevant work, but could perform the following jobs: (1) survey worker, (2) office helper, and (3) unskilled information clerk. Keeping the same functional limitations, the ALJ next inquired whether changing from light work to sedentary work would allow for an occupational base. The vocational expert responded that there would be unskilled sedentary jobs that Garrett could perform, including (1) document preparer, (2) touch-up screener, and (3) gauger. The ALJ's third hypothetical was identical to the first hypothetical, except that instead of frequent handling and fingering, the hypothetical individual could only occasionally handle and finger. For light work, the vocational expert testified that under such a limitation, Garrett could perform the following jobs: (1) counter clerk, (2) conveyor line tender, and (3) blending

7

tank helper.  For sedentary work, the vocational expert stated that under such a limitation, Garrett could perform work as a surveillance systems (1) monitor, or (2) a call-out operator.

Garrett's attorney also questioned the vocational expert:

> Q: Let's assume a worker has to have unscheduled breaks varying from a half hour to two hours twice a week. Would that individual be able to perform competitive employment?
>
> A: It's my opinion that they might start out at full-time employment, but typically if they were having those unscheduled breaks at that frequency, typically an employer would schedule them for fewer and fewer hours, and they wouldn't be able to sustain full-time, competitive employment in my opinion.
>
> Q: Okay.  And how about a worker who would be absent from work two to three days a month due to doctor's appointments, physical therapy, and the like?
>
> A: It's been my experience that typically an employer will tolerate one to two days of absences per month, and typically two days every month is often not tolerated. So, for two to three days every month, I don't feel the person would be able to sustain full-time, competitive employment.

(Administrative Record at 87.)

### C.  Garrett's Medical History

On January 15, 2009, Garrett met with Rita Burley, LISW, at West Iowa Community Mental Health Center, in Denison, Iowa, complaining of "feeling down." Garrett reported that he had been receiving psychiatric medication from his family physician for dysthymic disorder.  Upon examination, Burley noted that Garrett "identified his mood as up-and-down, having good days and bad days.  His affect appeared depressed

and tearful."[1] Burley opined that Garrett "may have minimized his symptoms and feelings during the intake."[2] Burley diagnosed Garrett with depressive disorder. She assessed his GAF at 56. Burley recommended individual therapy as treatment.

On August 13, 2009, Garrett met with Dr. Jack A. McCarthy, M.D., complaining of persistent paresthesias in his hands. Garrett described tightness in his hands, and loss of strength. Dr. McCarthy reviewed Garrett's medical history and noted that in the past, Garrett suffered from "significant" median nerve paresthesias and limitations with his hands in gripping and grasping due to swelling. In the past, he had undergone bilateral carpal tunnel release, and it "significantly" improved his pain. However, Garrett reported to Dr. McCarthy that his hand and wrist pain had returned over the past several months. Upon examination, Dr. McCarthy diagnosed Garrett with bilateral carpal tunnel syndrome, left long trigger finger, and diabetes mellitus. Dr. McCarthy administered epidural steroid injections to Garrett as treatment.

On October 25, 2010, Garrett returned to the West Iowa Community Mental Health Center "feeling down about how things were going in his life[.]"[3] He met with Lia Clausen, M.S. Upon examination, Clausen noted that Garrett's mood was depressed and his affect was very tearful. Garrett reported feeling sad three to four days per week. He also stated that he struggled with trust issues and felt worthless, hopeless, and helpless. Clausen diagnosed Garrett with major depressive disorder. Clausen assessed a GAF of 50 for Garrett. Clausen recommended individual therapy as treatment.

On September 21, 2011, at the request of Disability Determination Services ("DDS"), Garrett met with Dr. Rosanna M. Jones-Thurman, Ph.D., for a psychological evaluation. Dr. Jones-Thurman reviewed Garrett's medical issues:

---

[1] Administrative Record at 498.

[2] *Id.*

[3] *Id.* at 500.

9

> Mr. Garrett reports that he has diabetes and has had two wrist surgeries, two elbow surgeries, and three ankle surgeries. He does have trigger finger and torn tendons in his left arm. . . . He reports that he doesn't have a lot of strength in his hands and shoulders and his hands fall asleep. He reports that he has pain in his hands, ankle, and shoulder.

(Administrative Record at 506.) Dr. Jones-Thurman also reviewed Garrett's mental health history:

> [Garrett] reports that he has depression, lack of interest and stress about money. He reports that there has been a lot of stress, anxiety, and nervousness. He has problems sleeping and his appetite is generally okay. He has crying spells and denies any aggression and denies getting irritated or annoyed. He reports that sometimes he has no energy and is fatigued. He has problems with attention and concentration and he states that things were better and then he couldn't do his job and had financial problems and then things kind of started getting worse again.

(Administrative Record at 507.) Finally, Dr. Jones-Thurman addressed Garrett's activities of daily living:

> Mr. Garrett gets up around 7:00 a.m., gets his daughter up and ready for school, takes her to school, and then will visit with his parents. He doesn't do much and lets the dogs out, plays with the dog, cooks, cleans, and does laundry. . . . He does some errands and shopping and used to hunt and fish but doesn't do that anymore and watches some television.

(Administrative Record at 507.) Upon examination, Dr. Jones-Thurman found that Garrett's: (1) memory for immediate, recent, and remote events was intact; (2) concentration and attention were intact; (3) thought organization was coherent and logical; and (4) he appeared to have average intellectual ability. Dr. Jones-Thurman opined that Garrett was able to:

> remember and understand instructions, procedures, and locations and could carry out instructions and maintain attention, concentration, and pace. He would be able to

interact appropriately with and maintain attention,
concentration, and pace. He would be able to interact
appropriately with supervisors, co-workers, and the public.
He would be able to use fair judgment and respond
appropriately to changes in the work place.

(Administrative Record at 508-09.) Dr. Jones-Thurman diagnosed Garrett with depressive disorder. Dr. Jones-Thurman assessed Garrett with a GAF of 55.

On October 31, 2011, Garrett met with Dr. McCarthy for evaluation of his left upper extremity. Dr. McCarthy noted long-standing problems with his upper extremity. Dr. McCarthy also noted that Garrett was being treated by Miller Orthopedics for his upper extremity problems, including multiple injections over the past year. Dr. McCarthy found that Garrett had "significant" limitations in his ability to use his arm for "any reaching and/or grasping." Upon examination, Dr. McCarthy determined that Garrett "has rather significant discomfort coming down over his radial tunnel. He has significant pain with wrist extension as well as long finger extension."[4] Dr. McCarthy diagnosed Garrett with recurrent left lateral epicondylitis, left radial tunnel syndrome, and left long trigger finger state III to IV. Dr. McCarthy recommended surgical intervention, and Garrett underwent arm, wrist, and hand surgery on November 14, 2011.

On May 14, 2012, Garrett met with Dr. J.D. Ingram, M.D., complaining of left shoulder pain. In reviewing Garrett's symptoms, Dr. Ingram noted that:

[Garrett] reports that his left shoulder has been waking him up
at night. He reports that his range of motion has progressively
gotten worse. He rates his pain as a 10 on a 0-10 scale. . . .
He has had difficulties with both of his elbows as well. At this
point, he has a difficult time walking and standing for any
significant amount of time secondary to his left ankle. Due to
his upper extremities he has a difficult time lifting anything
over 10 lbs at least not very often. . . . I do feel that h[e] is
disabled and the form was filled out as a courtesy.

---

[4] Administrative Record at 555.

(Administrative Record at 662.) Upon examination, Dr. Ingram found a loss of range of motion and loss of strength in Garrett's left shoulder. Dr. Ingram also found that Garrett's grip strength was "strong and symmetrical, but not as strong as what I would expect for him."[5] Dr. Ingram diagnosed Garrett with left shoulder pain and tendinitis.

On May 30, 2012, Garrett met with Dr. Charles E. Rosipal, M.D., complaining of left shoulder pain over the past year. Dr. Rosipal noted that an MRI obtained on May 25, 2012, showed a partial rotator cuff tear. Upon examination, Dr. Rosipal found tenderness and "mild" discomfort in Garrett's left shoulder, and limitations in his range of motion. Dr. Rosipal recommended surgery as treatment. On June 22, 2012, Garrett underwent left shoulder arthroscopic rotator cuff repair and biceps tenotomy.

In a letter dated February 18, 2013, Julie Graeve, ARNP, Garrett's long-time treating nurse practitioner reviewed Garrett's medical history:

> Mr. Garrett was diagnosed with type I diabetes at age 9 and unfortunately has had difficulties increasing over the past few years in spite of excellent glycemic control. . . . He is also known to have diabetic retinopathy a[s] well as neuropathy. He has also had multiple orthopedic concerns.

(Administrative Record at 679.) As for his orthopedic concerns, Graeve specifically noted that Garrett has undergone arthroscopy of the right knee, bilateral carpal tunnel release, epicondylitis release of both elbows, extensive tendon repair of his left ankle, trigger finger release of third finger of his left hand, biceps surgery, and left shoulder surgery. Graeve opined that "despite the fact that he has been compliant with physical therapy he continues to have difficulties with strength as well as stability of the joints."[6] Graeve concluded that

---

[5] Administrative Record at 662.

[6] *Id*. at 679.

Garrett's various physical health problems "definitely ha[ve] affected his ability to work and maintain full time or even part time employment."[7]

Garrett's long-time endocrinologist, Dr. Claire Baker, M.D., who has treated Garrett for diabetes since 2007, also wrote a letter on behalf of Garrett. The letter is dated February 21, 2013. Dr. Baker opined:

> [Garrett] has had very frequent orthopedic problems which have required various surgeries (including rotator cuff surgery, elbow surgery, carpal tunnel release, and ankle surgery), therapy, and splinting. His orthopedic problems cause ongoing pain and have significantly limited his ability to find employment due to pain and time needed for therapy and recovery from the various procedures.

(Administrative Record at 680.) Dr. Baker concluded that "I suspect [Garrett] will have limitations and discomfort from these issues indefinitely, though since I'm an endocrinologist and this is outside my area of expertise, I am unable to give a more precise prognosis."[8]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Garrett is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1;

---

[7] Administrative Record at 679.

[8] *Id.* at 680.

13

(4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as

age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Garrett had not engaged in substantial gainful activity since November 15, 2009. At the second step, the ALJ concluded from the medical evidence that Garrett has the following severe impairments: diabetes, diabetic retinopathy and neuropathy, right knee dysfunction, bilateral carpal tunnel syndrome, bilateral epicondylitis, left ankle dysfunction status post tendon repair, left hand third trigger finger, and left shoulder dysfunction. At the third step, the ALJ found that Garrett did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Garrett's RFC as follows:

> [Garrett] has the residual functional capacity to perform a range of sedentary work[.] . . . Specifically, [Garrett] is able to occasionally lift and carry 10 pounds, sit for 6 hours in an 8-hour period, and stand and/or walk for 2 hours in an 8-hour period. [Garrett] is unable to perform jobs that require lifting above shoulder level with the (non-dominant) left upper extremity; involve climbing ladders, ropes, or scaffolds; require more than occasional stooping, crouching[,] kneeling, or crawling; or require more than frequent pushing, pulling, reaching, handling, or fingering with the upper extremities.

(Administrative Record at 35.) Also at the fourth step, the ALJ determined that Garrett was unable to perform his past relevant work. At the fifth step, the ALJ determined that

based on his age, education, previous work experience, and RFC, Garrett could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Garrett was not disabled.

### B. Objections Raised By Claimant

Garrett argues that the ALJ erred in four respects. First, Garrett argues that the ALJ failed to properly consider his obesity in making the ALJ's disability determination. Second, Garrett argues that the ALJ failed to properly consider the opinion evidence of both acceptable and non-acceptable treating sources. Third, Garrett argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Lastly, Garrett argues that the ALJ's RFC assessment is flawed because it is not supported by substantial evidence.

### 1. Obesity

Garrett argues that the ALJ erred by failing to address his morbid obesity. Garrett points out that multiple medical records in the administrative record from 2009 to 2013 report varying weights of 296 pounds to 334 pounds for Garrett.[9] Garrett concludes that "[t]o determine whether morbid obesity is a severe impairment, the ALJ was supposed to evaluate the effects of obesity, alone or combined with other impairments, on the functional ability of the Plaintiff to perform basic work activities."[10]

Social Security Ruling ("SSR") 02-1p provides that the Social Security Administration considers "obesity to be a medically determinable impairment and reminds adjudicators to consider the effects when evaluating disability. The provisions also remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." SSR 02-1p. The

---

[9] *See* Garrett's Brief (docket number 10) at 3 (collecting medical records where Garrett's weight was recorded).

[10] *Id.* at 10 (citing Social Security Ruling 02-1p(6)).

ruling also instructs "adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity." *Id.*

In *Forte v. Barnhart*, 377 F.3d 892, 896-87 (8th Cir. 2004), the Eighth Circuit Court of Appeals rejected the claimant's argument that the ALJ erred by failing to consider his obesity when assessing his RFC. The Eighth Circuit determined that because none of the claimant's treating doctors imposed work-related limitations on him due to obesity, the ALJ was not required to address the issue of obesity in the decision. *Id.* Additionally, in *Forte*, the Eighth Circuit also rejected the claimant's obesity argument on the grounds that at the administrative hearing, "he did not testify that his obesity imposed additional restrictions." *Id.* at 896; *see also Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (providing that the failure of an ALJ to address obesity in his or her decision is not fatal where there is no evidence in the record that obesity imposes limitations on the claimant's ability to work and there is no hearing testimony regarding limitations imposed by obesity). More recently, in *McNamara v. Astrue*, 590 F.3d 607 (8th Cir. 2010), the Eighth Circuit determined that "[g]iven that neither the medical records nor McNamara's testimony demonstrate that her obesity results in additional work-related limitations, it was not reversible error for the ALJ's opinion to omit specific discussion of obesity." *Id.* at 612.

Here, while Garrett cites to a plethora of medical records where his weight was recorded to be 300 pounds or more, those records offer no additional discussion of how his obesity results in additional work-related limitations. In fact, all of the medical records cited by Garrett provide no information or discussion about obesity; instead, the records simply record Garrett's weight for historical purposes. Moreover, neither in his testimony at the administrative hearing, nor in the disability and functional reports he filled out for the Social Security Administration did Garrett allege work-related limitations due to his obesity. Accordingly, the Court finds no reversible error in the ALJ's omission of a

specific discussion of Garrett's obesity in his decision. *See McNamara*, 590 F.3d at 612; *Forte*, 377 F.3d at 896-97; *Box*, 52 F.3d at 171.

### 2. Medical Source Opinions

Garrett argues that the ALJ failed to properly evaluate the opinions of various medical sources. First, Garrett argues that the ALJ improperly gave "some" weight to the opinion of Dr. Roy Abraham, a treating doctor.[11] According to Garrett, the ALJ should have given Dr. Larose's opinion "no credit at all."[12] Next, Garrett argues that the ALJ failed to properly evaluate and weigh the opinion of Dr. Ingram, a treating source. Similarly, Garrett also argues that the ALJ failed to properly evaluate and weigh the opinions of Julie Graeve, a treating nurse practitioner. Furthermore, Garrett argues that the ALJ erred by not addressing the opinion of Dr. Baker, Garrett's treating endocrinologist. Finally, Garrett argues that the ALJ failed to properly address the opinions of the non-examining State agency doctors who reviewed Garrett's medical records for DDS.

### a. Treating Acceptable Medical Sources

An ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical

---

[11] Garrett correctly points out that the opinion at issue was actually provided by Dr. Daniel J. Larose, M.D., not Dr. Abraham, who is a partner of Dr. Larose and treated Garrett in the past. *See* Administrative Record at 331. In any event, the Court will refer to the opinions at issue as those of Dr. Larose, instead of Dr. Abraham.

[12] Garrett's Brief (docket number 10) at 12.

assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id*..); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Cline v. Colvin*, 771 F.3d 1098, 1105 (8th Cir. 2014) ("[L]ess weight may be given to the treating physician's opinion, but the ALJ must always 'give good reasons' for doing so. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (quoting 20 C.F.R. § 404.1527(c)(2))."). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent

with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

### *(1)    Dr. Larose's Opinions*

In his decision, the ALJ addressed Dr. Larose's opinions as follows:

> the undersigned has accorded some weight to the opinion of Dr. Abraham [(*sic*)] in December 2010 that [Garrett] is able to perform "full duty" provided he does not lift with his palms facing downward (Exhibit 2F/3).[13] However, the undersigned has not accorded   great weight to this opinion because the

---

[13] *See* footnote 11 (explaining that the ALJ incorrectly attributed the opinion he was addressing to Dr. Abraham, when in reality he was addressing an opinion provided by Dr. Larose). *See also* Administrative Record at 331 (Dr. Larose's opinion discussing Garrett's ability to perform full duty work, except that he should avoid lifting in a palm down position).

record establishes that [Garrett] has undergone considerable treatment since the opinion was rendered.

(Administrative Record at 38.)

It is unclear from Garrett's brief what relief, if any, he seeks, other than having the ALJ give no consideration to Dr. Larose's opinion. The Court finds no error in the ALJ's consideration of Dr. Larose's opinions. Here, Garrett met with Dr. Larose regarding left elbow pain.[14] X-rays of the elbow were unremarkable. Upon examination, Dr. Larose determined that Garrett suffered minor pain and recommended physical therapy. Dr. Larose opined that Garrett could perform full work duties, except he should avoid lifting in the palm down position. Garrett makes no argument, and points to no evidence in the record that disputes Dr. Larose's finding. Accordingly, the Court finds no error in the ALJ's assignment of "some" weight to Dr. Larose's opinion. Moreover, the ALJ explained that he did not give Dr. Larose's opinion greater weight because he continued to be treated for left elbow pain at various points after Dr. Larose's treatment. Accordingly, the Court concludes that in addressing Dr. Larose's opinions, the ALJ properly complied with the Social Security Regulations requiring an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 416.927(c)(2); *see also Cline*, 771 F.3d at 1105 (providing the same).

### (2) *Dr. Ingram's Opinions*

Next, the Court will address the opinions of Dr. Ingram. In his decision, the ALJ acknowledged that he considered Dr. Ingram's opinions.[15] The ALJ found Dr. Ingram's conclusion that Garrett is "disabled" to be inconsistent with his ability to care for his daughter, drive a car, and maintain his home. The ALJ also stated that Dr. Ingram's

---

[14] *See* Administrative Record at 331.

[15] *Id.* at 38.

opinion addresses an issue "reserved to the Commissioner, and [it does not] contain any specific functional limitations."[16]

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(c)(2); 20 C.F.R. § 41.927(c)(2).

The Court finds that the ALJ has not fully met these requirements with regard to the opinions of Dr. Ingram. First, the ALJ points to no evidence in the record to support his assertion that Garrett's ability to care for his daughter, drive a car, or maintain his home is inconsistent with being disabled. It is unclear to the Court how having sole custody of a child constitutes a "good" reason for rejecting the opinion of Dr. Ingram. Similarly, the Court does not find Garrett's ability to drive his daughter to-and-from school to be a "good" reason for discounting Dr. Ingram's opinion.[17] As for Garrett's ability to maintain his home, the ALJ offers no discussion or explanation of the types of things Garrett is able to do, and how his ability to do such things is inconsistent with Dr. Ingram's opinions. Thus, the Court is unconvinced that this is a "good" reason for discounting Dr. Ingram's opinion. Moreover, while the determination of disability is reserved for the Commissioner, Dr. Ingram's opinions are not limited to an assertion that Garrett is disabled. For example, Dr. Ingram also opined that Garrett:

> has had difficulties with both of his elbows as well. At this point, he has a difficult time walking and standing for any

---

[16] Administrative Record at 38.

[17] In his decision, the ALJ does not address Garrett's ability to drive a car, other than to point out that he drives his daughter to-and-from school.

> significant amount of time secondary to his left ankle. Due to
> his upper extremities he has a difficult time lifting anything
> over 10 lbs at least not very often.

(Administrative Record at 662.) Upon examination, Dr. Ingram also found that Garrett had a loss of range of motion and strength in his left shoulder, and had less grip strength in his hands. The ALJ does not address any of these opinions from Dr. Ingram in his decision, and his failure to do so requires remand.

Therefore, under such circumstances, and having reviewed the entire record, the Court concludes the ALJ failed to give "good reasons" for rejecting the opinions of Dr. Ingram. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Ingram's opinions. Accordingly, the Court recommends that this matter should be remanded for further consideration of Dr. Ingram's opinions. On remand, the ALJ should provide clear reasons for accepting or rejecting Dr. Ingram's opinions and support his reasons with evidence from the record.

### (3)   *Dr. Baker's Opinions*

Finally, the Court will address the opinions of Dr. Baker. In a letter provided on behalf of Garrett, Dr. Baker stated that Garrett's "orthopedic problems cause ongoing pain and have significantly limited his ability to find employment due to pain and time needed for therapy and recovery from the various procedures."[18] Dr. Baker further stated "I suspect [Garrett] will have limitations and discomfort from these issues indefinitely, though since I'm an endocrinologist and this is outside my area of expertise, I am unable to give a more precise prognosis."[19] In his decision, the ALJ did not address Dr. Baker's opinion, and Garrett maintains that the ALJ's failure to do so is reversible error.

---

[18] Administrative Record at 680.

[19] *Id.*

The Court agrees with Garrett. Dr. Baker is a long-time treating physician for Garrett, who has treated him for diabetes-related problems since 2007. While she is an endocrinologist and not an orthopedic doctor, in her long-term treatment of Garrett, she has observed his many difficulties with orthopedic problems. In her letter, she specifically pointed out that "[Garrett] has had very frequent orthopedic problems which have required various surgeries (including rotator cuff surgery, elbow surgery, carpal tunnel release, and ankle surgery), therapy, and splinting."[20] The Court believes that the ALJ's failure to mention, let alone address Dr. Baker's opinions requires remand. Accordingly, the Court finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Dr. Baker's opinions. Therefore, the Court recommends that this matter be remanded for further consideration of Dr. Baker's opinions. On remand, the ALJ should address Dr. Baker's opinions and should provide clear reasons for accepting or rejecting her opinions. The ALJ must also support his reasons with evidence from the record.

### b.   *Treating Non-Acceptable Medical Source*

As a nurse practitioner, Julie Graeve, ARNP, is not classified as an "acceptable medical source" under the Social Security Regulations. Even though Graeve is not an "acceptable medical source," the Social Security Administration ("SSA") requires an ALJ to consider such opinions in making a final disability determination. On August 9, 2006, the SSA issued Social Security Ruling 06-03p. The purpose of Ruling 06-03p was to clarify how the SSA considers opinions from sources not classified as "acceptable medical sources." *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (discussing SSR 06-03p). Ruling 06-03p provides that when considering the opinion of a source that is classified as a "not acceptable medical source," such as a nurse practitioner, "it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of specialty or

---

[20] Administrative Record at 680.

expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p. In determining the weight afforded to "other medical evidence," an "ALJ has more discretion and is permitted to consider any inconsistencies found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005) (citation omitted).

In his decision, the ALJ addressed Graeve's opinions as follows:

> The undersigned has considered . . . the "Certification of Disability or Handicap" form completed by Julie Graeve[.] . . . However, . . . that [issue] is reserved to the Commissioner, and [does not] contain any specific functional limitations. Additionally, Ms. Graeve, a nurse practitioner, is not an "acceptable medical source" as that term is defined in the Regulations, and her assertion of disability (on a form that requires the existence of an impairment that "substantially impedes" the ability of an individual to live independently) is inconsistent with [Garrett's] testimony that he provides care for his daughter, drives a car, and maintains his home. Thus, [Graeve's] opinions are accorded little weight.

(Administrative Record at 38.)

Having reviewed the entire record, the Court finds that the ALJ failed to meet the requirements of SSR 06-03p as they pertain to the opinions of Graeve, a treating source for Garrett since 2003. Similar to the Court's discussion of Dr. Ingram's opinions in section *V.B.2.a.2* of this report, the Court is unpersuaded that Garrett's ability to care for his daughter, drive a car, and maintain his home constitute "good" reasons for discounting Graeve's opinions. The ALJ's reasoning lacks support from the record, and consists of little more than generic statements that fail to adequately address inconsistencies with record. Moreover, the ALJ does not even address the February 2013 letter provided by Graeve, where she notes that Garrett has undergone arthroscopy of the right knee, bilateral carpal tunnel release, epicondylitis release of both elbows, extensive tendon repair of his

left ankle, trigger finger release of third finger of his left hand, biceps surgery, and left shoulder surgery.[21] Graeve opined in the letter that "despite the fact that he has been compliant with physical therapy he continues to have difficulties with strength as well as stability of the joints."[22] Graeve concluded that Garrett's various physical health problems "definitely ha[ve] affected his ability to work and maintain full time or even part time employment."[23]

Therefore, the Court finds that the ALJ failed properly address Graeve's opinions. The Court further finds that the ALJ failed in his duty to fully and fairly develop the record with regard to Graeve's opinions. *See Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to fully and fairly develop the record). Accordingly, the Court recommends that this matter should be remanded for further consideration of Graeve's opinions. On remand, the ALJ should provide clear reasons for accepting or rejecting Graeve's opinions and support his reasons with evidence from the record.

### c.   *Non-Examining State Agency Doctors*

In his brief, Garrett argues that:

> The ALJ never explained that he did, or did not, give the state non-examining medical doctors any weight toward the determination of [Garrett's] RFC and disability. . . . If the ALJ meant to give the medical doctors GREAT WEIGHT as he did the [non-examining State agency] psychologists, then he did not explain how the state DDS doctors' opinions, rendered in October of 2011 and December of 2011, and who therefore did not have all of the information that the ALJ had from medical and other evidence dated later than that, could possibly be entitled to GREAT WEIGHT.

---

[21] *See* Administrative Record at 679.

[22] *Id.*

[23] *Id.*

26

Garrett's Brief (docket number 10) at 15. While he does not explicitly state it in his brief, Garrett implicitly asserts that this matter should be remanded to allow the ALJ to properly address and weigh the opinions of the non-examining State agency medical examiners.

In response, the Commissioner simply states that in appropriate circumstances, non-examining State agency doctors may be given greater weight than treating and examining sources.[24] Implicitly, because nowhere in his decision does the ALJ actually address the opinions of the non-examining State agency medical doctors, the Commissioner appears to assert that the ALJ properly considered, weighed, and relied on such opinions in his decision. Unfortunately, the Commissioner does not address Garrett's primary argument that the ALJ failed to even address the opinions of the non-examining State agency doctors, and offers no help on this issue.

Given that the Court has already found that the ALJ failed to fully and fairly develop the record with regard to the opinions of various treating sources, and recommends remand to correct such errors, the Court believes that on remand, the ALJ should also address and fully and fairly develop the record with regard to the opinions of the non-examining State agency medical doctors. *See Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to fully and fairly develop the record).

### 3. *Credibility Determination*

Garrett argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Garrett maintains that the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues that the ALJ properly considered Garrett's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's

---

[24] *See* Commissioner's Brief (docket number 11) at 13.

prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ

when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In his decision, the ALJ addressed Garrett's credibility as follows:

> After careful consideration of the evidence, the undersigned finds that [Garrett's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. As noted above, [Garrett] has diabetes that has caused both neuropathy and retinopathy. He also has a number of musculoskeletal impairments that have necessitated surgical intervention, and there is little doubt that he was unable to work during the recuperative periods immediately following those procedures. However, . . . the evidence of record does not support a conclusion that there has been any consecutive 12-month period since the alleged onset date during which [Garrett] was unable to perform a range of work at the sedentary level of exertion.

> [Garrett] maintains that his hands go numb when he uses a keyboard for five minutes, but he testified that he is able to drive and the record documents intact sensation in the hands in June 2012 (Exhibit 15F/19). [Garrett] alleges difficulty sitting more than brief periods, but this assertion is not supported by the testimony of his father at the hearing or information provided by [Garrett] in the "Functional Report -- Adult" he completed in August 2011 (Exhibit 3E/15). Likewise, although [Garrett] testified that his hands go numb while shaving and washing his hair and that his ankle hurts while showering, both [Garrett] and his father have indicated that

[he] does not need assistance with personal hygiene (Exhibit 3E).

[Garrett] rated pain in January 2011 as a "10" on a scale of one to 10, but the examining physician at that time reported that [Garrett] was in "no acute physical distress." The undersigned finds that this discrepancy leads to a conclusion that [Garrett] does not accurately report his pain. This conclusion is further supported by the fact that [Garrett] testified at the hearing that he has been in pain so long that he has "learned to live with it." Although that concept is somewhat nebulous, the undersigned finds that a reasonable person would conclude that an individual who has "learned to live with" pain is able to perform routine activities of daily living despite the pain.

[Garrett] is raising his school-age daughter by himself, and he testified that he has had sole custody of her since 2006. Additionally, although [Garrett] testified that he has had frequent instances of mental confusion due to labile blood sugar levels, he stated that he drives his daughter to and from school on a daily basis. Thus, the undersigned finds incredulous [Garrett's] allegations concerning the frequency and functional impact of blood sugar lability, as it is difficult to understand how an individual who would successfully petition for full custody of a child would have such disregard for their safety that they would drive them to and from school on a daily basis despite having the frequent instances of mental confusion alleged by [Garrett].

Finally, although the position of the Social Security Administration is that receipt of unemployment benefits does not automatically preclude a finding of disability during that period, the undersigned finds [Garrett's] assertion at that time that he was ready, willing, and able to return to work is at odds with his current allegation that he was disabled and unable to work at that time.

(Administrative Record at 37-38.)

In his decision, the ALJ properly set forth the law for making a credibility determination under the Social Security Regulations.[25] The ALJ also addressed some of the *Polaski* factors and explained his reasoning for finding Garrett's subjective allegations of disability less than credible.[26] Under such circumstances, the Court would normally affirm the ALJ's credibility determination. The Court is reluctant to affirm the ALJ's credibility determination in this instance, however, because the ALJ's decision relies heavily on the ALJ's perceived lack of limitations from physical impairments for Garrett. As discussed in sections *V.B.2.a.2* and *3*, *V.B.2.b*, and *V.B.2.c* of this report, the ALJ failed to fully and fairly develop the record and properly consider the opinions of two treating physicians, Dr. Ingram and Dr. Baker, a long-time treating nurse practitioner, Julie Graeve, and the non-examining State agency medical doctors. Dr. Ingram, Dr. Baker, and Graeve all opined that Garrett had serious limitations due to physical impairments. Furthermore, the ALJ's discussion of Garrett's activities of daily living is limited and generic in nature. The ALJ's discussion of this area focuses mainly on Garrett's ability to care for his daughter. The Court is unconvinced that Garrett's ability to care for his daughter and drive a car demonstrates that he has "the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir. 1982). Similarly, Garrett's ability "to engage in some life activities, however, does not support a finding that [he] retains the ability to work." *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004).

In conclusion, having reviewed the entire record, the Court believes that in recommending remand of this matter for further consideration of the opinions of Dr. Ingram, Dr. Baker, Graeve, and the non-examining State agency medical doctors, the

---

[25] *See* Administrative Record at 36.

[26] *Id.* at 37-38.

ALJ should also further consider Garrett's allegations of pain and disability in light of his reconsideration of the medical opinions. *See Wildman*, 596 F.3d at 968 (providing that an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole"); *Finch*, 547 F.3d at 935 (same); *see also Cox*, 495 F.3d at 618 (providing that an ALJ has a duty to develop the record fully and fairly). Therefore, in conclusion, the Court recommends that this matter be remanded for further development of Garrett's credibility determination.

### 4. RFC Assessment and Hypothetical Question

Garrett argues that the ALJ's RFC assessment is flawed. Specifically, Garrett argues that the ALJ's RFC assessment is not supported by substantial evidence. Garrett concludes that this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

Additionally, within his argument asserting that the ALJ's RFC assessment is flawed, Garrett also contends that the ALJ's hypothetical question to the vocational expert was incomplete because it did not properly account for all of his impairments and functional limitations. Garrett maintains that this matter should also be remanded in order to allow the ALJ may provide the vocational expert with a proper and complete hypothetical question.

The Court will first address Garrett's argument regarding the flawed RFC assessment. When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803; *see also Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (same). Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating

physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

In sections *V.B.2.a.2* and *3*, *V.B.2.b*, *V.B.2.c*, the Court recommended that remand was necessary because the ALJ failed to fully and fairly develop the record with regard to the opinions of Dr. Ingram, Dr. Baker, Julie Graeve, and the non-examining State agency medical doctors. Additionally, in section *V.B.3*, the Court recommended that remand was also necessary for further development of Garrett's credibility determination. Because the ALJ did not fully and fairly develop the record with regard to multiple medical source opinions, and failed to properly determine Garrett's credibility, the Court finds that the ALJ's RFC assessment is not based on all of the relevant evidence. *See Guilliams*, 393 F.3d at 803. Accordingly, the Court recommends that remand is necessary in order that the ALJ make his RFC assessment for Garrett based on all the relevant evidence, including

33

the opinions of Dr. Ingram, Dr. Baker, Julie Graeve, the non-examining State agency medical doctors, and Garrett's own testimony of pain and disability.

Turning to Garrett's argument regarding flawed hypothetical questions, social security law requires that hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

For the reasons stated recommending remand for futher consideration of Garrett's RFC, the Court also believes that remand is necessary to allow the ALJ to reconsider the hypothetical question posed to the vocational expert in order to make sure that it captures the concrete consequences of Garrett's limitations based on the medical evidence as a whole, including the opinions of Dr. Ingram, Dr. Baker, Julie Graeve, and the non-examining State agency medical doctors. *See Hunt*, 250 F.3d at 625 (Requiring the ALJ to "capture the concrete consequences of the claimant's deficiencies.").

### C.  Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings
> and transcript of the record, a judgment affirming, modifying,
> or reversing the decision of the Secretary, with our without
> remanding the cause for a rehearing.

42 U.S.C. § 405(g).  The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a
> finding of disability and the claimant has demonstrated his [or
> her] disability by medical evidence on the record as a whole,
> we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*,
833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where
"the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of
Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of
denial of benefits is justified where no substantial evidence exists to support a finding that
the claimant is not disabled). In the present case, the Court concludes that the medical
records as a whole do not "overwhelmingly support a finding of disability." *Beeler*,
833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record
and properly consider the opinions of Dr. Ingram, Dr. Baker, Julie Graeve, and the non-
examining State agency medical doctors; (2) fully and fairly develop the record with regard
to Garrett's credibility; (3) base his determination of Garrett's RFC on all the relevant
evidence; and (4) provide the vocational expert with a hypothetical question that captures
the concrete consequences of Garrett's limitations based on the medical evidence as a
whole. Accordingly, the Court recommends that this matter be remanded to the ALJ for
further consideration.

## VI. CONCLUSION

The Court recommends that this matter should be remanded to the Commissioner
for further proceedings. On remand, the ALJ should fully and fairly develop the record
and provide clear and specific reasons for accepting or rejecting the opinions of
Dr. Ingram, Dr. Baker, Julie Graeve, and the non-examining State agency medical
doctors. The ALJ must support his reasons with evidence from the record, particularly
with regard to Garrett's physical impairments. The ALJ should also consider all of the
evidence relating to Garrett's subjective allegations of disability, and address his reasons
for crediting or discrediting those allegations, particularly in light of his further

35

consideration of the opinions provided by Dr. Ingram, Dr. Baker, Julie Graeve, and the non-examining State agency medical doctors. Furthermore, the ALJ should make his RFC determination based on all the relevant evidence, again, including the opinions of Dr. Ingram, Dr. Baker, Julie Graeve, and the non-examining State agency medical doctors, and Garrett's own testimony of his pain and disability. Finally, the ALJ should also provide the vocational expert with a hypothetical question that captures the concrete consequences of Garrett's limitations based on the medical evidence as a whole. Accordingly, I believe that this matter should be remanded for further proceedings as discussed herein.

## VII. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that the district court **REVERSE** and **REMAND** this matter to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court.

DATED this _6th_ day of _July_, 2015.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA